# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| LAWNDALE CHRISTIAN HEALTH CENTER, in its capacity as Plan Sponsor and Plan Administrator of the Lawndale Christian Health Center Group Health Plan, <br><br> Plaintiff, <br><br> v. <br><br> NUTAN NIKHIL PATEL-SIONY, NOEL SIONY (a minor), ESTHER SIONY (a minor) ELIZABETH SIONY (a minor), and HOOGENDOORN & TALBOT LLP <br><br> Defendants. | Civil Action No. 17 C 2759 |

## COMPLAINT

Plaintiff Lawndale Christian Health Center, an Illinois not-for-profit corporation, in its capacity as Plan Sponsor and Plan Administrator of the Lawndale Christian Health Center Group Health Plan, by its attorney Jeffrey D. Corso of Cooney Corso & Moynihan, LLC, complains of Defendants Nutan Nikhil Patel-Siony, Noel Siony (a minor), Esther Siony (a minor), Elizabeth Siony (a minor), and Hoogendoor & Talbot LLP, as follows:

### Introduction

1. This is an action under section 502(a)(3) of the Employee Retirement Income Security Act of 1974 (hereinafter "ERISA"), 29 U.S.C. §1132(a)(3), for equitable relief to remedy violations of the Lawndale Christian Health Center Group Health Plan (sometimes hereinafter referred to as the "Plan"), which is an employee welfare benefit plan within the meaning of section 3(a) of ERISA, 29 U.S.C. § 1002(a).

**Jurisdiction and Venue**

2. Lawndale Christian Health Center is a not-for-profit corporation organized under the laws of the State if Illinois with its principal place of business located at 3860 W. Ogden Avenue, Chicago, Illinois, and is the plan sponsor and plan administrator of the Plan.

3. Defendant Nutan Patel-Siony ("Nutan") resides in this district at 1296 Stonehaven Circle, Downers Grove, Illinois, and was the wife of Dr. Nikhil Siony, deceased ("Dr. Siony").

4. Defendant Noel Siony, a minor and daughter of Nutan and Dr. Siony, resides in this district with her mother Nutan.

5. Defendant Esther Siony, a minor and daughter of Nutan and Dr. Siony, resides in this district with her mother Nutan.

6. Defendant Elizabeth Siony, a minor and daughter of Nutan and Dr. Siony, resides in this district with her mother Nutan.

7. Hoogendoorn & Talbot LLP (H&L) is a limited liability partnership engaged in the practice of law with its principal place of business located at 122 South Michigan Avenue, Suite 1220, Chicago, Illinois 60603.

8. Subject matter jurisdiction in this Court is proper. This Court has exclusive subject matter jurisdiction over the Plaintiff's claims pursuant to Section 502(e)(1) of ERISA, 29 U.S.C. §1132(e)(1), and 29 U.S.C. §1331 inasmuch as this complaint concerns actions arising under Section 502(a)(3) of ERISA, 29 U.S.C. §1132(a)(3), and the federal common law.

9. Venue in this Court is proper, pursuant to 28 U.S.C. § 1391(b) and (c) because Plaintiffs and Defendants reside within this judicial district.

**Background**

10. On October 17, 2014, Dr. Siony was severely injured in a motor vehicle accident when a vehicle he operated was struck by a vehicle operated by Rachel Nowakowski at or near the intersection of 75th Street and Book Road in Naperville, DuPage County, Illinois.

11. The injuries and damages sustained in the accident by Dr. Siony were proximately caused by the negligence of Nowakowski.

12. Dr. Siony suffered severe conscious pain and suffering as a result of a motor vehicle accident until he died three days later on October 20, 2014.

13. Dr. Siony incurred health care expenses arising from health care received by Dr. Siony from the time of the accident until the time of his death.

14. The Plan is established for the benefit of its eligible employees and their dependents.

15. Dr. Siony was at all times relevant covered by the Plan as a Covered Person, and therefore, he was eligible to receive benefits under the Plan for medical expenses incurred in treating accident-related injuries, subject and pursuant to the Plan's terms and conditions.

16. Subject and pursuant to the Plan's terms and conditions, the Plan paid benefits in the amount of $66,343.46 for health care expenses incurred as a result of injuries sustained by Dr. Siony from the accident ("Benefit Payments").

17. A true and accurate copy of the relevant portions of the Plaintiff's "Plan Document and Summary Plan Description for Lawndale Christian Health Center Group Health Plan" is attached hereto and incorporated herein by reference as Exhibit A.

19. The Plan describes the third party recovery, subrogation and reimbursement provisions on pages 50 through 52. These provisions provi8e as follows:

## FIRST AND/OR THIRD PARTY RECOVERY, SUBROGATION AND REIMBURSEMENT

### Benefits Subject to This Provision

This provision will apply to all benefits provided under any section of this Plan.

### When This Provision Applies

A Covered Person may incur medical or other charges related to Injuries or Illness caused by the act or omission of another person; or Another Party may be liable or legally responsible for payment of charges Incurred in connection with the Injuries or Illness. If so, the Covered Person may have a claim against that other person or Another Party for payment of the medical or other charges. In that event, the Plan will be secondary, not primary, and the Plan will be Subrogated to all rights the Covered Person may have against that other person or Another Party and will be entitled to Reimbursement if benefits are paid under the Plan. In addition, the Plan will have the first lien against any Recovery to the extent of benefits paid or to be paid and expenses Incurred by the Plan in enforcing this provision. The Plan's first lien supercedes any right that the Covered Person may have to be "made whole." In other words, the Plan is entitled to the right of first Reimbursement out of any Recovery the Covered Person procures or may be entitled to procure regardless of whether the Covered Person has received compensation for any of his damages or expenses, including any of his attorneys' fees or costs. Additionally, the Plan's right of first Reimbursement will not be reduced for any reason, including attorneys' fees, costs, comparative negligence, limits of collectability or responsibility, or otherwise. As a condition to receiving benefits under the Plan, the Covered Person agrees that acceptance of benefits is constructive notice of this provision.

**When a right of recovery exists, and as a condition to any payment by the Plan (including payment of future benefits for other Illnesses or Injuries), the Covered Person will execute and deliver all required instruments and papers, including a Subrogation and Reimbursement Agreement provided by the Plan, as well as doing and providing whatever else is needed, to secure the Plan's rights of Subrogation and Reimbursement, <u>before</u> any medical or other benefits will be paid by the Plan for the Injuries or Illness.** If the Plan pays any medical or other benefits for the Injuries or Illness before these papers are signed and services are rendered, the Plan still will be entitled to Subrogation and Reimbursement. In addition, the Covered Person will do nothing to prejudice the Plan's right to Subrogation and Reimbursement and acknowledges that the Plan precludes operation of the made-whole and common-fund doctrines.

If requested, the Covered Person must:

1. Execute and deliver a Subrogation and Reimbursement Agreement;

2. Authorize the Plan to sue, compromise and settle in the Covered Person's name to the extent of the amount of medical or other benefits paid for the Injuries or Illness under the

Plan and the expenses Incurred by the Plan in collecting this amount, and assign to the Plan the Covered Person's rights to Recovery when this provision applies;

3. Immediately reimburse the Plan, out of any Recovery made from Another Party, 100% of the amount of medical or other benefits paid for the Injuries or Illness under the Plan and expenses (including attorneys' fees and costs of suit, regardless of an action's outcome) Incurred by the Plan in collecting this amount (without reduction for attorneys' fees, costs, comparative negligence, limits of collectability or responsibility, or otherwise);

4. Notify the Plan in writing of any proposed settlement and obtain the Plan's written consent before signing any release or agreeing to any settlement; and

5. Cooperate fully with the Plan in its exercise of its rights under this provision, do nothing that would interfere with or diminish those rights and furnish any information required by the Plan.

The Plan Administrator has maximum discretion to interpret the terms of this provision and to make changes as it deems necessary.

### Amount Subject to Subrogation or Reimbursement

**Any amounts recovered will be subject to Subrogation or Reimbursement.** In no case will the amount subject to Subrogation or Reimbursement exceed the amount of medical or other benefits paid for the Injuries or Illness under the Plan and the expenses Incurred by the Plan in collecting this amount. The Plan has a right to recover in full, without reduction for attorneys' fees, costs, comparative negligence, limits of collectability or responsibility, or otherwise, even if the Covered Person does not receive full compensation for all of his charges and expenses.

### "Another Party"

"Another Party" will mean any individual or organization, other than the Plan, who is liable or legally responsible to pay expenses, compensation or damages in connection with a Covered Person's Injuries or Illness.

"Another Party" will include the party or parties who caused the Injuries or Illness; the insurer, guarantor or other indemnifier of the party or parties who caused the Injuries or Illness; a Covered Person's own insurer, such as uninsured, underinsured, medical payments, no-fault, homeowner's, renter's or any other liability insurer; a workers' compensation insurer; and any other individual or organization that is liable or legally responsible for payment in connection with the Injuries or Illness.

### "Recovery"

**"Recovery" will mean any and all monies paid to the Covered Person by way of judgment, settlement or otherwise (no matter how those monies may be characterized, designated or allocated) to compensate for any losses caused by, or in connection with, the Injuries or Illness. Any Recovery will be deemed to apply, first, for Reimbursement.**

### "Subrogation"

"Subrogation" will mean the Plan's right to pursue the Covered Person's claims for medical or other charges paid by the Plan against Another Party.

### Right of Reimbursement

A Covered Person will reimburse this Plan from any recovery received from the Covered Person's insurer, any first and/or third party, and including but not limited to Underinsured/Uninsured, Medical Payments and No-fault coverages that are found to be applicable. The amount of reimbursement will be up to and equal to the amount of benefits paid under the Plan. The right of recovery and reimbursement is binding upon the Covered Person whether the recovery is from a legal judgment, arbitration award, compromise settlement or any other arrangement, even if the recovery to the Covered Person does not include medical expenses. The Plan's right to recover precludes the operation of "common funds" and the Plan's equitable lien supersedes any other common law, statutory rules or state law. Further, the obligation to reimburse exists regardless of how the judgment and/or settlement is classified and whether or not the judgment or settlement specifically designates the recovery.

### "Reimbursement"

"Reimbursement" will mean repayment to the Plan for medical or other benefits that it has paid toward care and treatment of the Injury or Illness and for the expenses Incurred by the Plan in collecting this benefit amount.

### When a Covered Person Retains an Attorney

If the Covered Person retains an attorney, that attorney must sign the Subrogation and Reimbursement Agreement as a condition to any payment of benefits and as a condition to any payment of future benefits for other Illnesses or Injuries. Additionally, the Covered Person's attorney must recognize and consent to the fact that the Plan precludes the operation of the "made-whole" and "common fund" doctrines, and the attorney must agree not to assert either doctrine in his pursuit of Recovery. The Plan will neither pay the Covered Person's attorneys' fees and costs associated with the recovery of funds, nor reduce its reimbursement pro rata for the payment of the Covered Person's attorneys' fees and costs. Attorneys' fees will be payable from the Recovery only after the Plan has received full Reimbursement.

A Covered Person or his attorney who receives any Recovery (whether by judgment, settlement, compromise, or otherwise) has an absolute obligation to immediately tender the Recovery to the Plan under the terms of this provision. A Covered Person or his attorney who receives any such Recovery and does not immediately tender the Recovery to the Plan will be deemed to hold the Recovery in constructive trust for the Plan, because the Covered Person or his attorney is not the rightful owner of the Recovery and should not be in possession of the Recovery until the Plan has been fully reimbursed.

### When the Covered Person is a Minor or is Deceased

These provisions apply to the parents, trustee, guardian or other representative of a minor Covered Person and to the heir or personal representative of the estate of a

deceased Covered Person, regardless of applicable law and whether or not the minor's representative has access or control of the Recovery.

**When a Covered Person Does Not Comply**

**When a Covered Person does not comply with the provisions of this section, the Plan Administrator will have the authority, in its sole discretion, to deny payment of any claims for benefits by the Covered Person and to deny or reduce future benefits payable (including payment of future benefits for other Injuries or Illnesses) under the Plan by the amount due as Reimbursement to the Plan. The Plan Administrator may also, in its sole discretion, deny or reduce future benefits (including future benefits for other Injuries or Illnesses) under any other group benefits plan maintained by the Plan Sponsor. The reductions will equal the amount of the required Reimbursement. If the Plan must bring an action against a Covered Person to enforce this provision, then that Covered Person agrees to pay the Plan's attorneys' fees and costs, regardless of the action's outcome.**

19. At the time of the motor vehicle accident, Nowakowski was uninsured.

20. Therefore, Nutan caused a claim for uninsured motorist benefits against American Family Mutual Insurance Company ("American Family") pursuant to an insurance policy issued to Dr. Siony and Nutan.

21. After the motor vehicle accident, Nutan and American Family were reminded multiple times of the Plan's subrogation and reimbursement rights as well as the amount of Benefit Payments made to date.

22. The Plan was informed that the underinsured accident benefits available through American Family were limited to $100,000.

23. The Plan has recently learned that American Family paid, not $100,000, but $1.1 million (the "Settlement Funds"), and that these Settlement Funds have been distributed to H&L, Nutan and the three Minor Children.

24. Each Defendant, and any person at acting on their behalf, is a constructive trustee of the Settlement Funds for the benefit of Plaintiff.

25. On information and belief, American Family's payment of the Settlement Funds was in consideration of, among other things, a release of all claims, including claims for bodily injury, pain and suffering, and disability and disfigurement, which could have been asserted by Dr. Siony and the heirs of Dr. Siony arising from the accident.

26. The Settlement Funds are traceable to accounts owned by or for the benefit of H&L, Nutan and the Minor Children.

27. Pursuant to the provisions of ERISA and the Plan, Plaintiff claims a lien on the $1,100,000 received from American Family up to $66,343.46 (the "ERISA Lien").

28. Defendants refuse to reimburse Plaintiff the full amount of the ERISA Lien.

29. Plaintiffs bring this Complaint against Defendants to enforce the terms of the Plan. Specifically, Plaintiffs seek equitable relief in the form of a constructive trust or equitable lien upon the Settlement Funds to the full extent of the ERISA Lien.

## COUNT I — CLAIM FOR RELIEF UNDER ERISA § 502(a)(3)

30. Plaintiff re-alleges and incorporates herein by reference the allegations of paragraphs 1 through 29 of the plaintiff's Complaint as if each paragraph were fully set forth verbatim herein.

31. The Plan has a right of reimbursement to $66,343.46 in benefit payments paid on behalf of Dr. Siony.

32. Defendants are in possession of funds to which they are not entitled, and that belong in good conscience to Plaintiffs.

33. Defendants have been or will be unjustly enriched by their refusal to reimburse Plaintiff for the benefit payments of $66,343.46 paid under the Plan.

8

34. As a result of Defendants' violation of the terms of the Plan, Plaintiffs have sustained damages and seeks all appropriate equitable relief, pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), to enforce the terms of the Plan, including but not limited to:

 a. the imposition of an *in rem* constructive trust or equitable lien in favor of Plaintiffs upon the Settlement Funds in the amount of $66,343.46, plus accrued interest, in the possession of Defendants.

 b. a declaration of the Plan's ownership of the above-referenced settlement in the amount of $66,343.46 for benefit payments;

 c. an order directing Defendants to turn over the Settlement Funds up to the amount of $66,343.46, plus accrued interest, to Plaintiff

### COUNT II — TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

35. Plaintiff re-alleges and incorporates herein by reference the allegations of paragraphs 1 through 29 of the plaintiff's Complaint as if each paragraph were fully set forth verbatim herein.

36. The Plan, through its subrogation administrator International Subrogation Management, has informed Defendants that the Plan has made Benefit Payments of at least $66,343.46 and informed Defendants of the Plan's right of reimbursement from any recovery received from a third party.

37. Defendants claim that they are under no obligation to reimburse the Plan the sum of $66,343.46.

38. In light of Defendants' position, there is a substantial likelihood that the Settlement Funds will be depleted or disposed of without full reimbursement to the Plan.

39. The Plan will suffer irreparable harm if Defendants are not enjoined from disposing of or depleting the Settlement Funds.

40. There is a substantial likelihood that the Plan will prevail on the merits, as the language in the Plan is unambiguous and clear as to Plan's right to be reimbursed from the Settlement Funds.

## COUNT III — ATTORNEYS' FEES

41. The Plan re-alleges and incorporates herein by reference the allegations of paragraphs 1 through 29 of its Complaint as if each paragraph were fully set forth verbatim herein.

42. The Plan seeks its attorneys' fees and costs, pursuant to 29 U.S.C. §1132(g).

FOR THESE REASONS, Plaintiff prays for the following:

a. the imposition of an *in rem* constructive trust or equitable lien in favor of the Plan upon the Settlement Funds in the amount of $66,343.46, plus accrued interest and attorneys' fees, in the possession of Defendants.

b. a declaration of The Plan's ownership of $66,343.46 of the Settlement Funds;

c. an order directing Defendants to turn over Settlement Funds in the amount of $66,343.46 plus accrued interest and attorneys' fees, to the Plan;

d. an order temporarily and permanently restraining Defendants from distributing a sum of money sufficient to cover $66,343.46 plus accrued interest and attorneys' fees; and

e. for reasonable attorneys' fees in accordance with 29 U.S.C. §1132(g).

Dated: April 11, 2017

                                                LAWNDALE CHRISTIAN HEALTH CENTER

                                                Respectfully submitted,

By: _____

Jeffrey D. Corso #6206210
Cooney Corso & Moynihan, LLC
1311 Butterfield, Suite 308
Downers Grove, IL 60515
Tel 1-630-336-7393
Fax 1-630-390-2390
jcorso@ccvmlaw.com